UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHARIF LAYTON, | |
| Petitioner, | CIVIL ACTION NO. 1:22-cv-01814 |
| v. | (SAPORITO, J.) |
| BERNADETTE MASON, *et al.*, | |
| Respondents. | |

MEMORANDUM

On November 8, 2022, the United States District Court for the Eastern District of Pennsylvania received and filed a petition for a writ of habeas corpus submitted pursuant to 28 U.S.C. § 2254, signed and dated by the petitioner, Sharif Layton, on November 3, 2022. (Doc. 1). The case was transferred to this district pursuant to 28 U.S.C. § 2241(d) on November 10, 2022. (Doc. 4). Layton is incarcerated at SCI Mahanoy, located in Schuylkill County, Pennsylvania.

I. STATEMENT OF THE CASE

A. Procedural History

In April 2017, Layton was tried and convicted in the Dauphin County Court of Common Pleas for a bank robbery that occurred on January 28, 2011. Layton was sentenced to a term of 25 to 50 years in

prison. The trial court's factual summary of the case was reproduced in the Pennsylvania Superior Court's decision affirming his conviction:

> On January 28, 2011, the MidPenn Bank on North Front Street in Harrisburg was robbed. A man entered the building around 10:30 and was fully concealed. Tellers believed he was male based on his size, stature and voice. He handed two bags to each of the two tellers at their registers and then walked behind the teller line and opened a third teller register and took money from there. He took money that was attached to dye packs. He was wearing a black hoodie with a white logo on it. The man left with the bags of money and one teller followed him and locked the bank doors. The tellers then alerted authorities . . .
>
> Later that day, Deputy United States Marshall Gary Duncan received a phone call from an informant regarding the bank robbery. Duncan, in turn, relayed that information to Detective [Richard] Gibney . . . [That information] led [Gibney] to send detectives to 537 Curtin Street, Appellant's home address. As he walked toward the home from the rear, he saw a small spot of snow with a red or pinkish color to it and a black hooded sweatshirt . . .
>
> Jessica Mulhollem, a forensic scientist with the Pennsylvania State Police, received the black sweatshirt and a dye pack from the investigation. She was instructed to look for red dye on the sweatshirt and found some on the inside. She analyzed that dye and found that it was identical to the dye in the dye pack.
>
> Timothy Gavel, a PSP DNA lab forensic scientist, did DNA testing on samples from the wrists of the sweatshirt and of a buccal swab from Appellant. The left wrist provided a mixed sample; there was DNA from at least three people on the sleeve. One person's DNA did

> match the known buccal sample in eight places (they test at 16 places). Statistically speaking, there is between a one in nine billion and one in 18 billion chance of someone other than Appellant having that same DNA.

*Commonwealth v. Layton*, 1116 MDA 2017, 2018 WL 4474019, at *1-2 (Pa. Super. Ct. Sept. 19, 2018) (record citations omitted). The Pennsylvania Supreme Court denied Layton's petition for allowance of appeal. *Commonwealth v. Layton*, 204 A.3d 361 (2019).

Layton filed a Post-Conviction Relief Act ("PCRA") petition on June 24, 2019. (Doc. 18-1). The PCRA court appointed counsel to represent Layton. Following a review of the record of state criminal proceedings, the court-appointed attorney filed a *Finley* no-merit letter, advising the PCRA court that she found no meritorious claims for PCRA relief and requesting leave to withdraw from further representation. (Doc. 18-6); *see generally Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. Ct. 1988). On May 19, 2020, the PCRA court entered an order providing notice of its intent to dismiss the petition and granting the attorney leave to withdraw as counsel, and on June 10, 2020, the court dismissed the petition. (Docs. 18-8, 18-9).

Layton filed a notice of appeal, but on September 1, 2020, the PCRA

court deemed all issues in Layton's petition waived, because he had not filed an appropriate statement of issues pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). *See* (Docs. 18-11, 18-14). The Superior Court affirmed on July 1, 2021 (Doc. 18-17), and the Pennsylvania Supreme Court again denied leave to appeal. *Commonwealth v. Layton*, 281 A.3d 1029 (Pa. 2022). This petition followed.

### B. Habeas Claims Presented

Layton's petition asserts three grounds for relief:

(1) There was excessive delay between the January 2011 robbery and the November 2015 charges filed against Layton, during which two potential defense witnesses died. Because of this delay, Layton was unable to negotiate concurrent sentences with a different criminal case;

(2) The trial court wrongly denied Layton's motion to exclude police officers' testimony that an informant had tipped them off to Layton's involvement in the robbery;

(3) Trial counsel was ineffective because counsel "failed to interview

witnesses."[1]

## II. LEGAL STANDARDS

A federal court may not grant relief on habeas claims previously adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d). In drafting this statute, Congress "plainly sought to ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." *Williams v. Taylor*, 529 U.S. 362, 386 (2000); *see also Eley v. Erickson*, 712 F.3d 837, 846 (3d. Cir. 2013). Consequently, "state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." *Williams*, 529 U.S. at 387. "A federal habeas court may not issue the writ simply

---

[1] As discussed below, the petition does not elaborate further on this claim.

because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be [objectively] unreasonable." *Id.* at 411; *see also Eley*, 712 F.3d at 846. Moreover, any factual findings by the state trial and appellate courts are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013); *Eley*, 712 F.3d at 846.

Subject to limited exceptions, the petitioner must first exhaust all claims in state court. *See* 28 U.S.C. § 2254(b),(c). A state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A claim has been exhausted when it has been "fairly presented" to the state court, meaning that the court has addressed it on the merits. *Picard v. Connor*, 404 U.S. 270, 275 (1971). The petitioner bears the burden of proving exhaustion of all available state remedies. *Bronshtein v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005) (citing *Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993)).

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'" *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) (citing § 2254(b)). This court can consider such a claim only if the petitioner shows "cause and prejudice" or that a "fundamental miscarriage of justice" will result if the court does not consider the merits. *Coleman v. Thompson*, 501 U.S. 722, 724 (2012).

### III. Discussion

#### A. Excessive Delay

First, Layton argues that there was excessive delay in the filing of the criminal charges, given that the robbery occurred in January 2011 and Layton was not charged until November 2015.[2]

---

[2] The reasons for the delay were varied. Detective Gibney testified that initially, he did not believe he had sufficient evidence to secure an indictment; later, upon securing more evidence, he did not seek an indictment because police were investigating a series of related burglaries; and when the case was brought to the U.S. Attorney in 2013, the office declined to prosecute the case, citing insufficient evidence. Finally, in October 2015, Gibney "decided to call the Dauphin County District Attorney's Office to see if they would file charges," and Layton was charged soon thereafter. *See Layton*, 2018 WL 4474019, at *2-3.

The trial court denied Layton's motion to dismiss on this issue. On appeal, Layton argued that he was prejudiced because two potential defense witnesses died during the delay between the January 2011 robbery and the November 2015 charges, and because the delay prevented him from negotiating concurrent sentences with a different criminal case. *See* (Doc. 14-1 at 31-36). The Superior Court rejected these arguments on the basis that Layton did not show any evidence of actual prejudice. Layton had not shown that the deceased witnesses would have been available even if the trial had occurred promptly after the robbery. Further, Layton offered no evidence of what the missing testimony could have been or that it could not have been introduced through other means. The court also noted that an inability to negotiate current sentences was not a form of "prejudice" recognized in delayed-prosecution cases. *Layton*, 2018 WL 4474019, at *3-4.

Layton is not entitled to habeas relief on this ground. Although Layton argued on appeal that the witnesses "*could* have provided alibi testimony or other exculpatory testimony," (Doc. 14-1 at 35 (emphasis added)), he did not support that argument with evidence in the record from which the court could conclude that it *would* have been exculpatory.

Layton's petition does not point to any such evidence.

The state court's determination was also consistent with clearly established federal law. The Sixth Amendment speedy trial guarantee does not attach until a defendant is arrested or charged, but the Due Process Clause protects against "oppressive" pre-accusation delay. *See United States v. Lovasco*, 431 U.S. 783, 788-789 (1977). However, the mere possibility of prejudice from extended delay is insufficient to show a due process violation. *United States v. Marion*, 404 U.S. 307, 325 (1971). In this case, since the supposed prejudice from the unavailable witnesses was speculative, it did not give rise to a due process violation. *Lovasco*, 431 U.S. at 790 ("[P]roof of prejudice is generally a necessary but not sufficient element of a due process claim."); *see also Strohl v. Grace*, 354 F. App'x 650, 655 (3d Cir. 2009); *United States v. Dukow*, 453 F.2d 1328, 1330 (3d Cir. 1972) (deaths of two potential witnesses did not show prejudice where "no offer was made concerning the substance of the testimony that the two deceased persons would have proffered").

Nor is it clearly established federal law that Layton's inability to negotiate concurrent sentences could sustain a due process violation, particularly when any supposed difference in his sentences was also

speculative. *See Marion*, 404 U.S. at 325-36 ("Appellees rely solely on the real possibility of prejudice inherent in any extended delay . . . however, these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment."); *see also United States v. Diallo*, 732 F. App'x 94, 99 (3d Cir. 2018) (rejecting an appellant's argument that pre-indictment delay "substantially prejudiced him for sentenc[ing] purposes"); *United States v. Beckett*, 208 F.3d 140, 150-51 (3d Cir. 2000) (petitioner must show that the delay actually prejudiced his defense).

### B.  Denial of Motion to Exclude Testimony

Next, Layton argues that the trial court should not have denied his motion to prevent witnesses from referring to the fact that an informant tipped off police to his involvement in the robbery. However, this argument was presented to the state courts as a violation of Pennsylvania evidentiary law, not as a federal claim. *See* (Doc. 14-1 at 37-42). Accordingly, the claim is procedurally defaulted. *See McCandless*, 172 F.3d at 261-62.

As a result, the Court can only consider Layton's claim if he can show "cause and prejudice" or to avoid a "fundamental miscarriage of

justice." *Coleman*, 501 U.S. at 731. "Cause and prejudice" means that (1) "some objective factor external to the defense impeded counsel's effort to comply with the State's procedural rule," and (2) the errors at trial "worked to his actual and substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions." *Murray v. Carrier*, 477 U.S. 478, 488, 494 (1986) (quotation and emphasis removed). A fundamental miscarriage of justice means that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Layton does not make any such showing here. To the extent any federal claim was present, he does not say why it could not be presented to the state courts. Any prejudice to Layton from the ruling was minimal, since the testimony did not indicate that the informant identified Layton as the robber, or even a participant, only that an "informant" had provided "information" that led them to send detectives to the house. Nor does Layton attempt to make a showing of actual innocence.

### C. Ineffective Assistance of Counsel

Layton's final ground for seeking habeas relief is ineffective assistance of counsel, on the basis that "counsel failed to interview

witnesses." (Doc. 1 at 9). The allegation is not explained further. Although Layton claims in his petition that he raised this issue on appeal, there is no apparent reference to ineffective assistance of counsel in Layton's brief on direct appeal (Doc. 14-1), or his brief on appeal in the PCRA case (Doc. 18-15). His PCRA counsel's *Finley* letter indicated that Layton objected to trial counsel's failure to interview witnesses who could testify that he lived at a different address from the one he was arrested at. (Doc. 18-6, ¶ 28). In any event, the Superior Court specifically affirmed that Layton waived all issues by failing to file a timely statement of issues under Pennsylvania Rule of Appellate Procedure 1925(b). (Doc. 18-17, at 3-4).

When the state court declines to review a claim based on a state procedural rule, this Court may not review it, provided that "the state rule is 'independent of the federal question [presented] and adequate to support the judgment.'" *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007). The Pennsylvania Superior Court's finding of waiver under Rule 1925(b) has been found to meet these criteria. *See Price v. Wynder*, 350 F. App'x 692, 693 (3d Cir. 2009); *Buck v. Colleran*, 115 F.App'x 526, 528 (3d Cir. 2004); *see also Sidberry v. Fisher*, Civ. A. No. 11–888, 2015 WL 3866276, at *16 (W.D.Pa. June 23, 2015) (listing cases). Therefore,

Layton's ineffective assistance of counsel claim is procedurally defaulted.

Layton has not shown "cause and prejudice" for the Court to consider this claim. *Coleman*, 501 U.S. at 731. Layton has not explained why he was unable to file a Rule 1925(b) statement, nor explained why counsel was ineffective, other than his bare statement that "counsel failed to interview witnesses." He has not shown that he was substantially disadvantaged by this alleged error, or that he was actually innocent, and therefore cannot overcome procedural default.

## IV.  CONCLUSION

For the foregoing reasons, Layton's petition will be denied. Because Layton has not demonstrated "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), no certificate of appealability will issue. *See Buck v. Davis*, 137 S. Ct. 759, 773–75 (2017); *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Dated: September 23, 2024         *s/Joseph F. Saporito, Jr.*
                                  JOSEPH F. SAPORITO, JR.
                                  United States District Judge